UNITED TOOLCRAFT, INC. ET AL. *v.* SOUSLEY.

[No. 18,822. Filed January 24, 1958.]

*Jones, Obenchain, Johnson & Ford, Roland Obenchain* and *James H. Pankow,* all of South Bend, for appellants.

*Isadore D. Rosenfeld,* of South Bend, and *Alvin D. Blieden,* of Michigan City, for appellee.

ROYSE, P. J.—This is the second appeal in this case. In *United Toolcraft, etc. et al.* v. *Sousley* (1956), 128 Ind. App. 178, 138 N. E. 2d 165, we remanded the case back to the Industrial Board because, while evidence had been introduced on the question raised by appellant's last three paragraphs of answer, the Full Board failed to make a finding on such issues. Our mandate was as follows:

> "Proceeding remanded to the Industrial Board with instructions to make findings of fact on the issues presented by appellants in appellants' last three paragraphs of special answer."

Thereafter, on May 7, 1957, the Full Industrial Board of Indiana, in conformity with our mandate, made its finding and award. The pertinent portions are as follows:

> "That on or about the 20th day of July, 1953 the plaintiff was in the employ of the defendant, at an average weekly wage in excess of $50.00; that on said date he sustained personal injuries by reason of an accident, arising out of and in the course of his employment with the defendant, of which said accidental injury the defendant had knowledge but did not furnish the statutory medical attention and supplies; that the said accidental injury consisted of blisters to the plaintiff's right

foot, which said blisters developed while the plaintiff was driving a truck for the said defendant, and which said blisters to the plaintiff's right foot aggravated a previous diabetic condition of the said plaintiff, necessitating the amputation of the plaintiff's right leg below the knee; that as a result of the said accidental injuries the plaintiff was temporarily totally disabled for a period in excess of twenty-six weeks at intermittent intervals, between July 20, 1953 to the date of the original hearing of said cause, June 22, 1955; and that the plaintiff shall be entitled to twenty-six weeks of temporary total disability on account of the said accidental injuries, in addition to any impairment benefits to which he may be entitled.

". . . that on the 1st day of February, 1954 the defendants filed their Special Answer in four paragraphs . . . .

". . . at the time of the plaintiff's said accidental injuries the Travelers Insurance Company was the Workmen's Compensation Insurance Carrier and the Group Insurance Carrier for the employees of the defendants herein.

". . . that the plaintiff did not receive any Workmen's Compensation benefits whatsoever on account of the said accidental injuries.

". . . that the defendant, The Travelers Insurance Company, paid plaintiff or paid in his behalf certain disability and medical expenses under the Group Insurance hereinbefore mentioned; that the said benefits were as follows:

| | |
|---|---|
| Disability Benefits | $325.00 |
| Hospital and medical Benefits | 454.00 |

". . . that the said defendants shall be given credit for said sums as against any Workmen's Compensation benefits that may be awarded said plaintiff.

". . . that the said plaintiff has never paid or tendered his employer (defendants) or to its Workmen's Compensation Insurance Carrier any part of the moneys so claimed or received by him under said Group Insurance policy; that the *receipt of said Group Benefits by the plaintiff is not a bar to any award of compensation under the Workmen's Compensation Act of the State of Indiana.*" (Our emphasis.)

Upon these findings the Full Board awarded appellee compensation of $30.00 per week for a period of twenty-six weeks for temporary total disability and, in addition, compensation at the same rate for a period of one hundred fifty weeks for loss by amputation of appellee's right leg below the knee. It directed appellants to pay the reasonable and necessary hospital, medical and surgical expenses, and directed appellants to provide appellee with a suitable artificial limb for his amputated leg. It then allowed appellants a credit of $779.00 for disability and medical expenses paid under the group insurance policy.

We permitted the filing of a supplemental transcript of the foregoing proceedings, after which the parties filed supplemental briefs. We now proceed to a consideration of the questions now presented by the parties.

Appellants first contend the findings concerning the origin of the blister on appellee's right great toe are not supported by substantial evidence. This requires a consideration of the evidence in the record most favorable to appellee.

The record discloses that for a number of years prior to July 20, 1953 appellee was employed by appellant United Toolcraft, Inc. In the course of such employment during July, 1953 he drove a loaded tractor and trailer from South Bend, Ind. to Bridgeport, Conn. and Fort Lauderdale, Fla. and back to South Bend, Ind. There was evidence that the brakes were so defective he had to press exceedingly hard to stop the unit and he had to change gears on the truck to slow speed whenever it was necessary to stop. These trips were made when it was very hot, viz., 100 degrees or more. About July 14th he developed a blister on the ball of his left foot. This was treated by a doctor. After returning from Florida to South Bend he made three round trips from there to Charlevoix, Mich. with

the truck in the same condition. On his return to South Bend from the last trip to Michigan, while bathing his foot he noticed a severe blister across the bottom of the great toe of his right foot. His foreman directed him to see a doctor, who sent him to a hospital at South Bend. About August 21st the toe was amputated. Other toes on the foot became discolored, and on September 23rd the right leg was removed a few inches below the knee. Appellee had suffered from diabetes for about twenty-five years prior to these events. He took insulin regularly. His employer and the Company doctors knew of this condition. One of the physicians for appellee testified in answer to a hypothetical question substantially embracing the above facts—"My opinion is that this blister—pressure blister this man sustained is a precipitating factor or initiated the chain of circumstances that ultimately led to the loss of his extremity." He said "by loss of extremity" he meant the right leg below the knee.

While there was a conflict in the evidence of the doctors, we are of the opinion the foregoing evidence was amply sufficient to sustain the finding of the Board as to the cause of the blister. *Heflin* v. *Red Front Cash & Carry Stores, Inc.* (1948), 225 Ind. 517, 75 N. E. 2d 662; *Burton-Shields Company* v. *Steele* (1949), 119 Ind. App. 216, 224, 225, 83 N. E. 2d 623, 85 N. E. 2d 263; *Blackfoot Coal & Land Corporation* v. *Cooper* (1951), 121 Ind. App. 313, 95 N. E. 2d 639 (Transfer denied); *Eureka Chevrolet Company* v. *Franklin* (1956), 126 Ind. App. 435, 131 N. E. 2d 330 (Transfer denied); *Sollitt Construction Company* v. *Walker* (1956), 127 Ind. App. 213, 135 N. E. 2d 623 (Transfer denied).

Appellants contend the foregoing answer to the hypothetical question cannot be given consideration because

it was not based on facts established by the evidence and was based on erroneous assumptions.

The record discloses they made no objection to the question before the hearing member or the Full Board. While we do agree with this contention, failure to object has waived any error there might have been in permitting the doctor to answer the question.

Appellant next contends the emphasized clause of the above finding "that the receipt of said Group Benefits by the plaintiff is not a bar to any award of compensation under the Workmen's Compensation Act of the State of Indiana" is not a finding of fact but a conclusion of law and therefore must be disregarded, and must be read as though that clause was not contained therein, citing *Stoner* v. *Howard Sober, Inc.* (1954), 124 Ind. App. 581, 586, 118 N. E. 2d 504 (Transfer denied), which sustains this contention. However, for the reasons hereinafter stated we do not agree with appellants' contention that the elimination of this clause from the finding requires a reversal.

Finally, appellants contend the finding that appellee "has never paid or tendered his employer . . . or to its Workmen's Compensation Insurance Carrier any part of the moneys so claimed or received by him under said Group Insurance policy" bars his claim for compensation. In support of this contention they cite several cases that are wholly irrelevant to the question they futilely attempt to assert. This is an action under the Workmen's Compensation Act. It does not involve fraud, rescission of contract, and similar civil actions.

Acts 1951, ch. 258, §1, p. 733, being §40-1213, Burns' 1952 Repl., provides, in part, as follows:

"If the injured employee or his dependents shall agree to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute pro-

ceedings to recover the same, the said employer may have or claim a lien upon any settlement award, judgment or fund out of which such employee might be compensated from the third party."

Section 40-1406, Burns' 1952 Repl., provides:

"Any payments made by the employer to the injured employee during the period of his disability, or to his dependents, which, by the terms of this act were not due and payable when made, may, subject to the approval of the industrial board, be deducted from the amount to be paid as compensation: Provided, That such deduction shall be made from the distal end of the period during which compensation must be paid, except in cases of temporary disability."

In *Sharp* v. *Esso Standard Oil Co.* (1954 La.), 72 So. 2d 601, the Louisiana Court held that where an employer paid to the employee sick benefits under the Employer's Disability Benefit Plan, which is the identical situation we have here and which is also a Workmen's Compensation case, the employer was entitled to credit for the amounts so paid. To the same effect is the holding in *Sorenson* v. *Department of Labor and Industries et al.* (1940), 12 Wash. 2d 355, 121 P. 2d 978, where the Supreme Court of Washington said:

"It seems to us that the proper solution, if respondent refuses or fails to repay the lump-sum amount, lies in an alternative. The department should either apply the lump-sum payment already made, as an advance payment on the monthly amounts, until the sum of $2600 has thus been exhausted, or else it should take credit for that amount as a partial conversion, after the value of respondent's annuity has been fixed and certified by the state insurance commissioner, and then continue to make monthly payments, reduced accordingly and proportionately."

In that case one of the contentions was that the appellants, having received a lump-sum settlement for a total

disability, were precluded from recovering for subsequent injuries. There the Court found that by virtue of settlement he had not received all that he was entitled to and therefore could receive additional compensation.

Appellee has cited the cases of *In Re: Holland* (1920), 72 Ind. App. 588, 126 N. E. 236; *Bituminous Casualty Corp.* v. *Rorres* (1956), 127 Ind. App. 4, 135 N. E. 2d 523; *Louisville N. A. & C. R. Co.* v. *Emily,* 105 Ind. App. 123, 12 N. E. 2d 1002. While these cases do not involve the precise question here considered, they do express the principles which have guided this court in construing the provisions of the Indiana Workmen's Compensation Act to carry out the humane purpose of this Act.

In this case the payments made to appellee under the disability policy were paid under the mistaken belief that his condition was the result of an illness and not from an injury arising out of and in the course of his employment. Under such circumstances it seems to us that it would not only be unjust but would contravene the above quoted provisions of the statute to say because he accepted such payments he was barred from the benefits to which he was entitled under the Compensation Law.

Appellee frankly concedes appellants were properly allowed by the award in this case credit for payments made under the disability policy.

Judgment affirmed.

Pfaff, J., not participating.

NOTE.—Reported in 147 N. E. 2d 558.